BluSky Restoration Contractors, LLC v. Brown, 2022 NCBC 63.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 10032

BLUSKY RESTORATION
CONTRACTORS, LLC,

      Plaintiff/Counterclaim
Defendant,

v.

STEVEN W. BROWN,

      Defendant/Counterclaim
Plaintiff/Third-Party
Plaintiff,

and

BLUSKY HOLDCO, LLC,

      Third-Party Defendant.

**ORDER AND OPINION ON STEVEN
W. BROWN'S MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS**

1. **THIS MATTER** is before the Court on Defendant Steven W. Brown's ("Brown") Motion for Partial Judgment on the Pleadings (the "Motion") filed on 8 July 2022. (ECF No. 79 ["Mot."].) The Motion requests that the Court grant judgment in his favor as a matter of law on nine claims pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure (the "Rule(s)").

2. For the reasons set forth in this Order and Opinion, the Court hereby **GRANTS** the Motion, in part, and **DENIES** the Motion, in part.

*Akerman, LLP by Bryan G. Scott, Jasmine Pitt, and Adam L. Massaro, pro hac vice, for Plaintiff/Counterclaim Defendant and Third-Party Defendant.*

*Wagner Hicks, PLLC by Abbey M. Krysak, Sean C. Wagner, Derek M. Bast, and Meagan L. Allen, for Defendant/Counterclaim Plaintiff/Third-Party Plaintiff.*

Robinson, Judge.

# I.    INTRODUCTION

3.    This dispute arises from Brown's employment at BluSky Restoration Contractors, LLC ("BluSky Restoration") and his conduct prior to and following his resignation.  While employed by BluSky Restoration, Brown was party to several agreements that contained restrictive covenants.  Those covenants are now at issue because Brown has gone to work for a competitor company, Sasser Company LLC.

4.    Brown seeks judgment in his favor pursuant to Rule 12(c) on his counterclaim for declaratory judgment construing the enforceability of the restrictive covenants contained in the 2018 Limited Liability Partnership Agreement for BluSky Management Incentive, LP (the "LP Agreement").  (Mot. 2.)

5.    Additionally, Brown seeks judgment in his favor pursuant to Rule 12(c) on BluSky Restoration's claims contained in its Second Amended Complaint (the "SAC") for: (1) breach of the LP Agreement; (2) breach of BluSky HoldCo, LLC's ("BluSky HoldCo") 2018 Amended and Restated Limited Liability Company Agreement (the "LLC Agreement"); (3) breach of the 2017 Confidentiality, Noncompetition, and Nonsolicitation Agreement (the "2017 Agreement"), to the extent it is based on violation(s) of the non-solicitation provision; (4) injunctive relief, to the extent it is based on alleged violations of the three agreements as described in the Motion; and (5) punitive damages.  (Mot. 2–3.)

6.    Finally, Brown seeks judgment in his favor pursuant to Rule 12(c) on BluSky HoldCo's claims for: (1) breach of the LP Agreement; (2) breach of the LLC

Agreement; and (3) injunctive relief, to the extent it is based on alleged violations of the LP Agreement and the LLC Agreement.  (Mot. 3.)

## II.    PROCEDURAL BACKGROUND

7.    Plaintiff BluSky Restoration initiated this action on 22 December 2021 with the filing of its Complaint, (ECF No. 1), and filed its First Amended Complaint as of right on 21 January 2022, (ECF No. 8).

8.    Brown filed his Answer to the First Amended Complaint on 21 February 2022.  (ECF No. 22.)   Brown's filing included a Counterclaim and Third-Party Complaint against BluSky Restoration and BluSky HoldCo.  (ECF No. 22.)

9.    BluSky Restoration and BluSky HoldCo jointly answered Brown's Counterclaims on 22 April 2022.  (Pl.'s Answer Def.'s Countercl., Third-Party Def.'s Answer, Third-Party Countercl., ECF No. 53 ["HoldCo Countercl."].)   In the same pleading, BluSky HoldCo, as Third-Party Defendant, asserted Third-Party Counterclaims against Brown.  (HoldCo Countercl.)

10.    Brown answered BluSky HoldCo's Counterclaims on 23 May 2022.  (ECF No. 67.)  That same day, BluSky Restoration filed the SAC.  (Second Am. Compl., ECF No. 66 ["SAC"].)  Brown answered the SAC on 6 July 2022.  (Answer Second Am. Compl., ECF No. 78 ["Brown's Answer"].)  Absent further amendments allowed by the Rules, these documents, and their attached exhibits, complete the pleadings in this matter.

11.    Two days later, Brown filed the Motion.  (Mot.)  The Motion has been fully briefed.

12. On 14 September 2022, the Court held a hearing on the Motion at which all parties were represented by counsel (the "Hearing"). Having considered the Motion, briefs from the parties, and arguments at the Hearing, the Motion is now ripe for resolution.

## III. FACTUAL BACKGROUND

13. The Court does not make findings of fact on a Rule 12(c) motion for judgment on the pleadings. The following factual background is drawn from the pleadings and matters of record that are properly considered, relevant, and necessary to the Court's consideration of the Motion.

### A. The Parties

14. Brown is a resident of Guilford County, North Carolina. (Brown's Answer ¶ 4.)

15. BluSky Restoration is a Delaware limited liability company with its principal place of business in Colorado. (SAC ¶ 2.) BluSky Restoration is authorized to conduct business in North Carolina and is a subsidiary of BluSky HoldCo. (SAC ¶ 2; HoldCo Countercl. ¶ 3.)

16. BluSky HoldCo is a Delaware limited liability company with its principal place of business in Colorado. (SAC ¶ 3.)

### B. Brown's Employment with BluSky Restoration

17. BluSky Restoration is a full-service restoration, renovation, environmental and roofing provider for properties damaged by water, fire, storms, and other disasters across the nation. (SAC ¶ 8; Brown's Answer ¶ 8.) BluSky Restoration serves customers owning commercial, residential, and multifamily real estate, by

providing restoration, renovation, environmental, and commercial roofing services ranging from testing and assessment to mitigation and reconstruction. (SAC ¶ 9; Brown's Answer ¶ 9.)

18. BluSky Restoration "typically provides services in over forty states, and it routinely performs work throughout the United States[,]" including Puerto Rico. (SAC ¶¶ 11–12.)

19. BluSky Restoration extended an offer of employment to Brown in September 2017, which he accepted. (SAC ¶¶ 21–22; Brown's Answer ¶¶ 21–22.)

20. In connection with his employment, Brown executed the 2017 Agreement on 26 September 2017. (SAC ¶ 22.) The 2017 Agreement was effective as of 1 October 2017. (Pls.' Ex. A 1 ["2017 Agreement"].)

21. In October 2017, BluSky Restoration named Brown its National Director of Restoration, a role that reported directly to BluSky Restoration's Chief Operating Officer. (SAC ¶ 29; Brown's Answer ¶ 29.)

22. As National Director of Restoration, Brown served in a multi-state and national operations role, which included working with vendors and clients to complete BluSky Restoration's restoration projects. (SAC ¶ 30; Brown's Answer ¶ 30.)

23. BluSky Restoration alleges that Brown traveled nationwide on its behalf, and that he had knowledge of, and built and maintained, BluSky Restoration's relationships with vendors and customers nationwide. (SAC ¶ 31.) It also alleges that Brown gained knowledge of BluSky Restoration's business model and other

confidential and proprietary information, including customer and vendor acquisition strategies, marketing materials, and information used by BluSky Restoration to gain a competitive advantage in the industry. (SAC ¶ 32.)

## C. Brown's Resignation and Events that Followed

24. On 25 October 2021, Brown submitted his resignation letter to BluSky Restoration. (SAC ¶ 61; Brown's Answer ¶ 61.)

25. In conversations after receiving the resignation letter, BluSky Restoration alleges that company personnel "repeatedly reminded Brown of the restrictive covenants" and cautioned him to comply with them. (SAC ¶ 63.) In those conversations, BluSky Restoration alleges that Brown acknowledged the restrictive covenants, and "requested to be released from them". (SAC ¶ 64.) BluSky Restoration "declined to release Brown from his restrictive covenants." (SAC ¶ 65; Brown's Answer ¶ 65.)

26. Brown's last day of employment with BluSky Restoration was 19 November 2021. (SAC ¶ 69; Brown's Answer ¶ 69.) BluSky Restoration alleges that, on his last day, Brown signed a form acknowledging his voluntary resignation from BluSky Restoration. (SAC ¶ 70.) Further, it alleges Brown certified that he did not have in his possession, or that he had failed to return, any "(a) Confidential Information of the Company, (b) Trade Secrets belonging to the Company, (c) copies of such information," or (d) documents which evidence such information. (SAC ¶ 70.)

27. BluSky Restoration alleges that Brown accessed, downloaded, and forwarded information and documents starting in October 2021 and continuing

through his last day. (SAC ¶ 73.) The information accessed included "internal documents containing confidential, proprietary, and trade secret information," and that information was transferred to Brown's external hard drive, iPhone, and various flash drives. (SAC ¶¶ 74, 78, 87.) BluSky Restoration alleges Brown knew retaining this information after his employment terminated was a violation of the restrictive covenants. (SAC ¶¶ 75–77.)

28.     BluSky Restoration alleges Brown has produced in discovery copies of fourteen flash drives and an external hard drive containing BluSky Restoration Data. (SAC ¶ 87.)

29.     BluSky Restoration also alleges that Brown "solicited, and attempted to solicit, various BluSky Restoration employees" to work with him at his current place of employment, Sasser Company LLC ("Sasser"), a direct national competitor with BluSky Restoration. (SAC ¶¶ 68, 89, 97.) For example, BluSky Restoration alleges that Brown discussed with Paul Miller, the Chief Operating Officer at Sasser, soliciting a BluSky Restoration employee to work at Sasser on or about 10 November 2021. (SAC ¶ 90.)

30.     As of the date of the Hearing, Brown remains employed with Sasser and has worked for Sasser since December 2021. (SAC ¶ 104.)

**D.     The Applicable Agreements and Terms in Dispute**

31.     On 14 August 2018, the LP Agreement was entered into by BluSky HoldCo, BluSky Management Incentive GP, LLC ("BluSky Management"), and various individuals (together, the "Partnership"). (SAC ¶ 34; Brown's Answer ¶ 34.) That same day, the Partnership entered into the LLC Agreement. (SAC ¶ 35.)

32.     Also on 14 August 2018, BluSky HoldCo issued Series B Common Units to the Partnership, each of which Units were held by the Partnership as "profits interests." (SAC ¶ 36.)

33.     On 14 September 2018, Brown executed a Joinder in which he acknowledged receipt of the LP Agreement, and "agreed to become a party thereto and be bound thereby." (SAC ¶ 37; Brown's Answer ¶ 37.) By signing the Joinder, Brown agreed to be bound by the terms of the LP Agreement and to become a limited partner of the Partnership. (SAC ¶ 39; Brown's Answer ¶ 39.)

### i.     The LP Agreement

34.     BluSky Restoration's third claim for relief, contained in Count Three of the SAC is for breach by Brown of the LP Agreement and the restrictive covenants therein. (SAC ¶¶ 130–42.) Specifically, it alleges that BluSky Restoration is a "Subsidiary" of BluSky HoldCo within the meaning of the LP Agreement and it is an intended third-party beneficiary of the restrictive covenants contained in section 12.10 of the LP Agreement. (SAC ¶ 133.) The claim for breach of contract includes allegations that Brown breached the non-solicitation, non-competition, and confidentiality provisions of the LP Agreement. (SAC ¶¶ 136, 139, 141.)

35.     BluSky HoldCo's first claim for relief in Count One of its Counterclaim against Brown is for breach of the LP Agreement and the restrictive covenants contained in section 12.10. (HoldCo Countercl. ¶¶ 109–20.) It alleges that the LP Agreement is a valid, enforceable agreement between Brown and BluSky HoldCo, and that Brown breached the confidentiality, noncompetition, and non-solicitation provisions thereof. (HoldCo Countercl. ¶¶ 110, 114, 117, 119.)

36. The Joinder that Brown executed states that it "relates to" the "[LP] Agreement of BluSky Management Incentive, LP (the Partnership)[.]" (SAC Ex. B, ECF No. 66.2 ["Joinder"].) Further, it states that Brown "acknowledges receipt of the [LP] Agreement and agrees to become a party thereto and to be bound thereby. In particular and without limitation, [Brown] assumes all of the rights and obligations of a Management Limited Partner as set forth in the [LP] Agreement." (Joinder.)

37. BluSky Restoration alleges that Brown agreed to several restrictive covenants contained within the LP Agreement, including confidentiality, non-solicitation, and non-competition provisions. (SAC ¶ 50.)

38. The confidentiality provision contained in section 12.10(a) of the LP Agreement provides that Brown must keep confidential "all non-public information, including but not limited to, business or trade secrets . . ., price lists, methods, formulas, know-how, customer and supplier lists, distributor lists, product costs, marketing plans, research and development and financial information" received by Brown by reason of his status as a limited partner. (SAC ¶ 51; Brown's Answer Ex. D 27, ECF No. 22.4 ["LP Agreement"].)

39. The non-solicitation provision in section 12.10(b) of the LP Agreement provides that Brown will refrain from soliciting BluSky Restoration's employees, customers, suppliers, licensees, and other business contacts during and after his employment. (SAC ¶ 52.) It states,

> [d]uring the Restricted Period, no Limited Partner (other than BluSky HoldCo) shall directly or indirectly through another Person . . . (i) induce or attempt to induce any employee, officer or independent contractor of BluSky HoldCo or any of its Subsidiaries to leave the employ of, or

terminate its affiliation with, BluSky HoldCo or such Subsidiary, or in any way interfere with the relationship between BluSky HoldCo or any of its Subsidiaries and any such Person, (ii) hire or seek any business affiliation with any Person who was an employee, officer or independent contractor of BluSky HoldCo or any of its Subsidiaries within one (1) year after such Person ceased to be an employee, officer or independent contractor of BluSky HoldCo or any of its Subsidiaries . . . or (iii) induce or attempt to induce any Person who is a . . . customer, supplier, licensee or other business relation of BluSky HoldCo or any of its Subsidiaries to cease doing business with BluSky HoldCo or such Subsidiary.

(LP Agreement 28.)

40.     The non-competition provision contained in section 12.10(c) of the LP Agreement provides that Brown shall refrain from competing against BluSky Restoration after termination of his employment. (SAC ¶ 53.)

During the Restricted Period, no Management Limited Partner shall directly or indirectly, either for such Management Limited Partner or for any other Person, anywhere within the "Restricted Territory" (as defined below), (i) own any interest in, manage, control, or participate in, or (b) in each case in a competitive capacity, consult with, render services for, serve as an agent or representative for, finance or in any other manner engage in any business with, any Person (including, without limitation, any division, group or franchise of a larger organization) that engages in the Business in the Restricted Territory, or that otherwise competes with the Business in the Restricted Territory.

(LP Agreement 28–29.)

### ii.     LLC Agreement

41.     BluSky Restoration's claim for relief in Count Two of the SAC is for breach by Brown of the LLC Agreement. (SAC ¶¶ 117–29.) BluSky Restoration alleges that Brown, as a limited partner, acquired Series B Common Units in BluSky HoldCo and therefore qualified as a Series B Common Member of BluSky Restoration under the

terms of the LLC Agreement. (SAC ¶ 40.) BluSky Restoration also alleges that

Brown "consented to be bound by the LLC Agreement." (SAC ¶ 41.)

42. Specifically, BluSky Restoration alleges Brown breached three of the

restrictive covenants in section 13.17 of the LLC Agreement. (SAC ¶ 118.) BluSky

HoldCo's second claim for relief in its Counterclaim against Brown is similar, alleging

the same breaches as BluSky Restoration. (HoldCo Countercl. ¶¶ 121–32.)

43. The confidentiality provision contained in section 13.17(a) provides:

> [Brown] shall keep . . . all non-public information, including but not limited to, business or trade secrets . . ., price lists, methods, formulas, know-how, customer and supplier lists, distributor lists, product costs, marketing plans, research and development and financial information, received by such Member solely by reason of such Member's status as a member of the Company relating to the Company . . . confidential[.]

(Def.'s Ex. C, Am. Restated LLC Agreement 55–56, ECF No. 54.3 ["LLC Agreement"].)

44. The non-solicitation provision contained in section 13.17(b) provides, in

relevant part, that Brown shall not,

> [d]uring the Restricted Period, . . . directly or indirectly through another Person . . . (i) induce or attempt to induce any employee, officer or independent contractor of the Company or any of its Subsidiaries . . . to leave the employ of, or terminate its affiliation with, the Company or such Subsidiary, or in any way interfere with the relationship between the Company or any of its Subsidiaries and any such Person, (ii) hire or seek any business affiliation with any Person who was an employee, officer, or independent contractor of the Company or any of its Subsidiaries within one (1) year after such Person ceased to be an employee, officer or independent contractor of the Company or any of its Subsidiaries . . . or (iii) induce or attempt to induce any Person who is . . . a customer, supplier, licensee or other business relation of the Company or any of its subsidiaries to cease doing business with the Company or such Subsidiary, reduce the business that it does with the Company or such Subsidiary or in any way interfere with the [applicable] relationship.

(LLC Agreement 56-57.)  Both "Restricted Period" and "Subsidiary" are defined terms in the LLC Agreement.

45.    The non-competition provision contained in section 13.17(c) provides that,

> [d]uring the Restricted Period, [Brown] shall [not] directly or indirectly, . . . anywhere within the "Restricted Territory" . . ., (i) own any interest in, manage, control, or participate in, or (b) in each case in a competitive capacity, consult with, render services for, serve as an agent or representative for, finance or in any other manner engage in any business with, any Person . . . that engages in the Business in the Restricted Territory, or that otherwise competes with the Business in the Restricted Territory.

(LLC Agreement 57.)

46.    For purposes of both the LP Agreement and LLC Agreement, " 'Business' means any [sic] the business of providing project management services relating to restoration, renovation, environmental, and roofing to commercial and multifamily properties, as engaged in by the Company and its Subsidiaries during any time when such Management Member was employed by the Company or any of its Subsidiaries." (LLC Agreement 57.)  Further, "Restricted Territory" means the United States and "any state, province[,] or territory in any other country, in which the Company or any of its Subsidiaries engages in the Business or actively plans to engage in the Business as of the date of the challenged activity[.]"  (LLC Agreement 57.)  If the challenged activity follows the termination of the Management Member's employment, then Restricted Territory is determined "as of the date of such Management Member's termination or at any time during the 12 months preceding the date of such Management Member's termination."  (LLC Agreement 57.)  The SAC provides that,

at any given time, "BluSky Restoration typically provides services in over forty states, and it routinely performs work throughout the United States." (SAC ¶ 11.)

47. For purposes of the LP Agreement and LLC Agreement, the "Restricted Period" is defined as "a period of time from the date hereof until the date that is two years after the termination of employment (for any reason) of such Member." (LLC Agreement Ex. B 12.) Further, a "Subsidiary" means (1) any corporation with more than 50% of the stock of any class or classes of which have ordinary voting power to elect a majority of the directors of such corporation and is owned directly or indirectly through one or more subsidiaries of such Person, or (2) any entity in which someone directly or indirectly has more than a fifty percent (50%) equity interest. (LP Agreement Ex. B 9.)

### iii. The 2017 Agreement

48. Count 1 of the SAC is for breach of the 2017 Agreement. (SAC 23 ¶¶ 106–16.) It alleges that Brown breached the "nonuse and nondisclosure of proprietary information and the non-solicitation provisions" of the 2017 Agreement. (SAC ¶ 116.) The Motion only challenges the enforceability of the non-solicitation provision.[1]

49. Section 2(b)(ii) of the 2017 Agreement contains the non-solicitation provision, which provides:

> [d]uring the Protection Period, [Brown] shall not directly or indirectly through another Person . . . (i) induce or attempt to induce any employee or officer or independent contractor of the Company or any of its Subsidiaries to leave the employ of, or terminate its affiliation with, the Company or such Subsidiary, or in any way interfere with the

---

[1] BluSky HoldCo does not include in its Counterclaim any claims for relief related to the 2017 Agreement. (*See* HoldCo Countercl.)

relationship between the Company or any of its Subsidiaries and any such Person, (ii) hire or seek any business affiliation with any Person who was an employee or officer or independent contractor of the Company or any of its Subsidiaries within one year after such Person ceased to be an officer or employee of the Company or any of its Subsidiaries, or (iii) induce or attempt to induce any customer, supplier, licensee, referral source or other business relation of the Company or any of its Subsidiaries to cease doing business with the Company or such Subsidiary, reduce the business that it does with, or refers to, the Company or such Subsidiary, or in any way interfere with the [applicable] relationship[.]

(2017 Agreement 4.)

### E.     The Merger

50.     Brown contends that, prior to his resignation, BluSky HoldCo went through a merger process that (1) terminated all ownership interests of BluSky HoldCo and BluSky Management, including Brown's; (2) dissolved BluSky Management; and (3) resulted in BluSky HoldCo amending and superseding the LLC Agreement.  (Brown's Mem. Supp. Mot. Partial J. Pleadings 6, ECF No. 80 ["Br. Supp. Mot."].)

51.     The merger involved a number of parties, but in relevant part was between KPSKY Acquisition, Inc., the parent company, BluSky HoldCo, and KPSKY Company Merger Sub, LLC.  (Agreement Plan Merger 27, § 2.01(w), ECF No. 22.6 ["Letter of Transmittal"].)  The merger effectuated the surrender of all units of BluSky HoldCo, and KPSKY Company Merger Sub, LLC merged into BluSky HoldCo, with BluSky HoldCo being the surviving entity.  (Letter of Transmittal; ECF No. 22.7, 2.) [2]

---

[2] Another consequence of the merger was the cancellation of the limited partnership of BluSky Management.  (ECF No. 22.8.)  Therefore, BluSky HoldCo was the remaining entity post-merger, and BluSky Restoration remained its subsidiary.

52. BluSky HoldCo filed its Certificate of Merger with the Delaware Secretary of State on 19 October 2021. (ECF No. 22.7.) The Certificate of Cancellation for BluSky Management was filed that same day. (ECF No. 22.8.)

53. Brown contends that the Agreement and Plan of Merger (the "Merger Agreement") executed by BluSky HoldCo, and the Letter of Transmittal sent to BluSky Management's limited partners (including Brown), clarify that limited partners were required to surrender their interests in exchange for payment, and that limited partners ceased "to have any rights as an equity[ ]holder" of BluSky HoldCo. (Letter of Transmittal; Br. Supp. Mot. 6–7; *see also* Brown's Answer Countercl. Third-Party Compl. ¶¶ 42–69, ECF No. 22 ["Brown's Countercl. Third-Party Compl."].) BluSky Restoration and BluSky HoldCo admit that the "limited partners of BluSky Management received payment as appropriate for their respective interests in accordance with the terms of the LP Agreement and Merger Agreement." (HoldCo Countercl. ¶ 63.) BluSky Restoration and BluSky HoldCo otherwise deny Brown's allegations that the restrictive covenants of the LP Agreement and LLC Agreement are no longer applicable. (Brown's Countercl. Third Party Compl. ¶¶ 106–09; HoldCo Countercl. ¶¶ 106–09.)

54. BluSky Restoration and BluSky HoldCo admit that all of BluSky Management's partnership interests were in fact cancelled in connection with the Merger. (Brown's Answer ¶ 46; HoldCo Countercl. ¶ 46.)

55. BluSky HoldCo admits that it is now wholly owned by KPSKY Acquisition, Inc., which was the contemplated result of the Merger. (HoldCo Countercl. ¶ 69.)

## IV.    LEGAL STANDARD

56.    "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761 (2008).  On a Rule 12(c) motion, "[t]he movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment." *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974).  "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact." *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725 (1976).  The Court must read the pleadings in the light most favorable to the nonmoving party, and

> [a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale*, 286 N.C. at 137 (citations omitted).  When ruling on a motion for judgment on the pleadings, the Court "is to consider only the pleadings and any attached exhibits, which become part of the pleadings." *Cash v. State Farm Mut. Auto. Ins. Co.*, 137 N.C. App. 192, 202 (2000) (internal marks omitted).

57.    "Judgment on the pleadings is not favored by the law[.]" *Huss v. Huss*, 31 N.C. App. 463, 466 (1976).  The function of Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale*, 286 N.C.

at 137. Judgment on the pleadings "is not appropriate merely because the claimant's case is weak and he is unlikely to prevail on the merits." *Huss*, 31 N.C. App. at 469. "A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact[.]" *Dobias v. White*, 239 N.C. 409, 412 (1954) (internal citations omitted).

## V. ANALYSIS

58. Brown seeks partial judgment on the pleadings as to the claims for breach of the restrictive covenants contained in the LP Agreement and LLC Agreement because they are "no longer enforceable due to a corporate merger" that occurred prior to his resignation. (Br. Supp. Mot. 2.) In the alternative, Brown argues those restrictive covenants are overbroad and unenforceable as a matter of law. (Br. Supp. Mot. 2.) Brown seeks judgment on the pleadings as to the 2017 Agreement's non-solicitation provision, contending that it expired on his last day of employment. (Br. Supp. Mot. 2.)

59. Brown also seeks judgment on the pleadings as to both BluSky Restoration and BluSky HoldCo's claims for injunctive relief, and BluSky Restoration's claim for punitive damages. (Br. Supp. Mot. 29–30.)

### A. The Breach of Contract Claims

60. To state a claim for breach of contract in North Carolina, a plaintiff need only allege "(1) [the] existence of a valid contract and (2) [a] breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000).

61. Each of the three agreements here have choice of law provisions stating that Delaware law applies. (LP Agreement § 12.6; LLC Agreement § 13.7; 2017

Agreement § 11(a).)  Our Supreme Court has held that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Cable Tel. Servs. v. Overland Contr.*, 154 N.C. App. 639, 641 (2002) (citing *Land Co. v. Byrd*, 299 N.C. 260, 262 (1980)).  Therefore, this Court applies North Carolina law for procedural issues, and Delaware law as to substantive issues of law.

### i. BluSky Restoration's Count 1 for Breach of the 2017 Agreement

62.   In Count 1 of the SAC, BluSky Restoration alleges Brown breached the non-solicitation provision of the 2017 Agreement "when he solicited, emailed, and/or otherwise contacted BluSky Restoration employees . . . during the course of and/or following termination of his employment for the purpose of inducing them, directly or indirectly, to leave BluSky Restoration and to join Sasser." (SAC ¶ 114.)  Further, it alleges "one or more [of] BluSky Restoration['s] employees and independent contractors . . . terminated their affiliation with BluSky Restoration as a direct result of Brown's solicitation." (SAC ¶ 115.)

63.   Brown argues that the 2017 Agreement includes a severance payment requirement, and since no severance was paid to him, the 2017 Agreement expired on his last day of employment with BluSky Restoration.  (Br. Supp. Mot. 28–29.)  Therefore, he argues, the 2017 Agreement is no longer valid as applied to him.  BluSky Restoration contends that the non-solicitation provision within the 2017 Agreement does *not* require it to pay any type of severance before enforcement.  (Pl. Third-Party Def. Resp. Br. Opp. Mot. 7, ECF No. 86 ["Joint Br. Opp. Mot."].)

64. The severance provision in section 2(b)(vi) of the 2017 Agreement provides that "[f]or purposes of [s]ection 2(b)(i)[, the non-compete provision,] the Protection Period shall automatically expire on the date of termination of Employee's employment with the Company . . . by Employee for any reason[.]" (2017 Agreement 5.)

> [P]rovided, the Company shall have the right to extend the Protection Period, in its sole discretion, from the date the Protection Period would otherwise expire automatically through the date immediately preceding the two (2) year anniversary of the [d]ate of [t]ermination, by delivering to Employee a written notice of its election to so extend the Protection Period and paying Employee an amount equal to his gross monthly salary as of the [d]ate of [t]ermination multiplied by the number of months in which the Protection Period is being extended[.]

(2017 Agreement 5.)

65. In his brief, Brown excludes the language in the severance provision that limits the payment requirement in that provision to the enforceability of the non-compete provision—it is not relevant or controlling when considering the enforceability period of the non-solicitation provision. Interpreting the severance payment provision based on the plain language of the 2017 Agreement, the Court finds that it applies only to the non-compete provision which is not at issue for purposes of the Motion.

66. In the SAC, BluSky Restoration affirmatively alleges that there is a contract, and that Brown breached that contract by soliciting BluSky Restoration employees during the course of and/or following termination of his employment.

67. Viewed in the light most favorable to the non-movant, the allegations in the SAC are sufficient at this stage to state a claim for breach of contract as to the 2017

Agreement's non-solicitation provision.  Therefore, the Motion is DENIED as to this claim.

### ii. BluSky Restoration and BluSky HoldCo's Claims for Breach of Contract as to the LLC Agreement

68.    BluSky Restoration's second claim for relief, contained in Count Two of the SAC, alleges breach by Brown of the LLC Agreement, and the restrictive covenants therein.  As with the first claim for relief, the SAC affirmatively alleges that the LLC Agreement "constituted a valid and enforceable agreement and was supported by valuable consideration given at the time of contracting."  (SAC ¶ 118.)  It further alleges Brown was a Management Member, and that at all times BluSky Restoration was a subsidiary of BluSky HoldCo within the meaning of the LLC Agreement, and thus was entitled to sue for enforcement.  (SAC ¶¶ 119–20.)  Further, BluSky Restoration alleges that "Brown knew that the restrictive covenant provisions of the LLC Agreement . . . were valid and enforceable."  (SAC ¶ 121.)  It also alleges specific facts as to the ways in which Brown has breached the non-competition, non-solicitation, and confidentiality provisions of that agreement.  (SAC ¶¶ 122–28.)

69.    Count Two of BluSky HoldCo's Counterclaim alleges that the LLC Agreement and its restrictive covenants constituted a valid and enforceable agreement supported by valuable consideration.  (Countercl. ¶ 122.)  Further, it alleges the LLC Agreement entitled BluSky HoldCo to sue a defaulting Management Member, including Brown, to enforce its terms; that Brown knew the restrictive covenant provisions of the LLC Agreement were valid and enforceable; and that

Brown breached the LLC Agreement's non-solicitation, non-competition, and confidentiality provisions. (Countercl. ¶¶ 125–31.)

70. As a result, both BluSky Restoration and BluSky HoldCo have set forth factual allegations sufficient to otherwise validly state a claim for breach of contract as to the LLC Agreement.

71. Brown argues that the restrictive covenants in the LLC Agreement ceased to be enforceable against him at the time of the merger. (Br. Supp. Mot. 21–22.) Brown admits that he is a "Management Member" under the LLC Agreement, and thus that he was bound by the LLC Agreement and the terms therein. (Brown's Answer ¶ 43.)

72. In addressing Brown's arguments regarding the effect of the merger and Merger Agreement, the Court does not rely on the Second Amended and Restated Limited Liability Company Agreement of BluSky HoldCo, LLC ("Second Amended LLC Agreement") as this document is not part of the pleadings, nor is it attached as an exhibit to any of the pleadings. *See Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204 (2007) (citing Rule 12(c)) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"). The Court, therefore, declines to consider the Second Amended LLC Agreement so as not to convert the Motion into one for summary judgment.

73. The Court, therefore, disposes of Brown's argument that, since the Second Amended LLC Agreement allegedly does not contain restrictive covenants, or

mention those from the LLC Agreement, that the restrictive covenants in the LLC Agreement did not survive the merger. (*See* Br. Supp. Mot. 21.) A genuine issue of material fact remains as to whether the Second Amended LLC Agreement contained restrictive covenants or mentioned surviving clauses or provisions in the LLC Agreement.

74. Further, there is no evidence before the Court that may properly be considered on a motion pursuant to Rule 12(c) indicating that BluSky Restoration or BluSky HoldCo intended to release Brown from the restrictive covenants in the LLC Agreement. While the Merger Agreement contemplates that an amendment to the LLC Agreement *might* be necessary, it provides only that amendments should be made "as applicable" and does not mention terminating the terms of the LLC Agreement. (Merger Agreement § 2.02, ECF No. 22.6 Annex A; Joint Br. Opp. Mot. 12–13.) Further, when Brown asked to be released from the restrictive covenants, BluSky Restoration declined to do so. (SAC ¶¶ 64–65.)

75. Since there is no record evidence of an intent to release Brown from the restrictive covenants in the LLC Agreement after the merger, the Court interprets the contract in a manner that prioritizes the parties' intentions as reflected in the four corners of the agreement. *ITG Brands, LLC v. Reynolds Am., Inc.*, 2017 Del. Ch. LEXIS 819, at *15 (Nov. 30, 2017) ("When interpreting a contract, [Delaware] Court[s] will give priority to the parties' intentions as reflected in the four corners of the agreement"). Therefore, the Court concludes for purposes of the Motion that the merger did not terminate the LLC Agreement as applied to Brown.

76.     The only remaining issue, then, is whether the restrictive covenants are unenforceable as a matter of law.  Brown contends the covenants are overly broad and therefore unenforceable.  In Delaware, rules of "contract interpretation" are substantive.  *See North Am. Philips Corp. v. Aetna Casualty & Sur.*, 1995 Del. Super. LEXIS 348, at *3 (Del. Ch. Ct. Apr. 28, 1995); *see also Cable Tel. Servs. V. Overland Contr.*, 154 N.C. App. 639, 642 (2002) (Where parties to a contract agree that a jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect). Thus, this Court looks to Delaware law to determine whether the restrictive covenants at issue created a valid agreement.

77.     Under Delaware law, a restrictive covenant is enforceable if: (1) it meets general contract law requirements, (2) is reasonable in scope and duration, (3) advances a legitimate economic interest of the party enforcing the covenant, and (4) survives a balance of the equities.  *Kan Di Ki, LLC v. Suer*, 2015 Del. Ch. LEXIS 191, at *66 (Jul. 22, 2015).  "When evaluating the reasonableness of a restrictive covenant, a court must consider how the temporal and geographic restrictions operate together. The two dimensions necessarily interact."  *Del. Elevator, Inc. v. Williams*, 2011 WL 1005181, at *8 (Mar. 16, 2011).

78.     "When interpreting a contract, the court's ultimate goal is to determine the shared intent of the parties.  A determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law."  *Concord Steel, Inc. v. Wilmington Steel Processing Co.*, 2009 WL 3161643, at *18 (Sept. 30, 2009).

79. On a Rule 12(c) motion, if there are any issues of fact as to whether the restrictive covenants at issue are valid under Delaware law, then this court must deny the Motion. *See Ragsdale*, 286 N.C. at 137. All well pled allegations by the non-movant must be taken as true. *See id.*

80. BluSky Restoration and BluSky HoldCo contend that the restrictive covenants meet general contract law requirements based on the allegations in the SAC and Counterclaim, respectively. (*See infra* ¶¶ 68–69.) Therefore, the Court turns to whether the restrictive covenants are reasonable in scope and duration.

81. Here, the restrictive covenants in the LLC Agreement are limited in duration, geographic scope, and description of what acts are prohibited.

82. The "Restricted Period" is the contractually defined duration of each covenant. It is defined as "a period of time from the date hereof until the date that is two years after the termination of employment (for any reason) of such Member." (LLC Agreement Ex. B 12.)

83. The geographic scope of each restrictive covenant is limited to the "Restricted Territory." The covenants, as alleged, prohibit Brown from engaging in the prohibited conduct within the United States or any state or province in another country in which BluSky Restoration or BluSky HoldCo engage in or plan to engage in the restoration business. (LLC Agreement 57.) This applies as of the date of Brown's termination as an employee. (LLC Agreement 57.)

84. The prohibited conduct varies by covenant. The non-competition provision of the LLC Agreement prohibits Brown from engaging in business with any

competitor of BluSky Restoration within the Restricted Territory for the Restricted Period, thus prohibiting him from working for any business providing project management services relating to restoration, renovation, environmental, and roofing to commercial and multifamily properties. The non-solicitation provision prohibits Brown from soliciting BluSky HoldCo's and its Subsidiaries' employees, customers, suppliers, licensees, and other business contacts during and after his employment during the Restricted Period. Finally, the confidentiality provision requires Brown to keep confidential all non-public information, including business or trade secrets.

85. In Delaware, "the reasonableness of a covenant's scope is not determined by reference to physical distances, but by reference to the area in which a covenantee has an interest the covenants are designed to protect." *Weichert Co. of Pennsylvania v. Young*, 2007 WL 4372823, at *3 (Dec. 7, 2007).

> The overarching intent of a non-compete covenant is to protect the geographical area where the business owner conducts business, and to protect its economic interests against those who may have gained an unfair competitive advantage against them as a former employee. A national scope can be particularly necessary in today's world where so many businesses operate on a national or even global scale. Delaware courts and other jurisdictions have permitted a nationwide non-compete covenant in certain circumstances and are not adverse to broad geographical scopes when they are necessary to protect the legitimate business interests of the party trying to enforce the covenant.

*O'Leary v. Telecom Res. Serv., LLC*, 2011 Del. Super. LEXIS 36, at *13–14 (internal citations omitted).

86. First, on the record before the Court, the duration of the restrictive covenants is reasonably limited temporally. *All Pro Maids Inc. v. Layton*, 2004 Del. Ch. LEXIS 116, at *17–18 n.23 ("Noncompete agreements covering limited areas for

two or fewer years generally have been held to be reasonable.") (citing *Delaware Express Shuttle Inc. v. Older*, 2002 Del. Ch. LEXIS 124, at *54 (Oct. 23, 2002) (finding three years unreasonable because of rapid customer turnover and reducing duration of covenant to two years); *COPI of Delaware, Inc. v. Kelly*, 1996 Del. Ch. LEXIS 136, at *12 (Oct. 25, 1996) (two year restriction reasonable for company officers and sales personnel); *Research & Trading Corp. v. Pfuhl*, 1992 Del. Ch. LEXIS 234, at *31 (Nov. 19, 1992) (one year restriction reasonable for company's vice president)).

87. On the record before the Court based on the pleadings, it is not clear what geographic scope BluSky Restoration and BluSky HoldCo have a genuine interest in protecting. The SAC provides that BluSky Restoration "typically provides services in over forty states, and it routinely performs work throughout the United States[,]" including operations in Puerto Rico. (SAC ¶¶ 11–12.) BluSky Restoration and BluSky HoldCo also allege that Brown was a high-level executive at BluSky Restoration, covering the United States for his employer, who had knowledge of unique strategies, marketing materials, trade secrets, and other confidential information used to reach and keep customers and vendors.

88. Based on the information before the Court, the Court concludes that, given BluSky Restoration and BluSky HoldCo's seemingly broad scope of business dealings, and its allegations regarding the responsibility Brown exercised and knowledge he had about their operations, and prior to development of a more complete factual record, the restrictive covenants in the LLC Agreement are not facially unreasonable in duration and scope. Viewing the pleadings in the light most favorable to the non-

movants, there remains a genuine issue of material fact as to: (1) how long is reasonable to hold Brown responsible for complying with the covenants, and (2) what a reasonable geographic scope of the non-compete provision would be. On the information before the Court, it is clear that under Delaware Law, the restrictive covenants in the LLC Agreement are not overbroad as a matter of law, at least at the pleading stage, given the remaining issues of fact.

89. The remaining two elements of the test require that the restrictive covenants advance a legitimate economic interest of the party enforcing the covenant and survive a balance of the equities. *Kan Di Ki*, 2015 Del. Ch. LEXIS 191, at *66.

90. The "protection of an employer's goodwill" is a legitimate economic interest that is "vulnerable to misappropriation if . . . former employees are allowed to solicit its customers shortly after changing jobs." *All Pro Maids*, 2004 Del. Ch. LEXIS 116, at *18. Preserving confidential information and maintaining business relationships are also legitimate economic interests. *FP US Holdings, LLC v. Hamilton*, 2020 Del. Ch. LEXIS 110, at *30–31 (Mar. 27, 2020); *Kan Di Ki*, 2015 Del. Ch. LEXIS 191, at *71.

91. In the context of enforcing a restrictive covenant, "[e]quity may decline to grant specific enforcement if the interests that the employer seeks to protect are ephemeral in contrast to the grave harm to the employee resulting from enforcing the restriction." *Weichert Co.*, 2007 Del. Ch. LEXIS 170, at *18 (internal marks and citations omitted).

92.    Here, BluSky Restoration and BluSky HoldCo have alleged that Brown had access to and knew confidential information and trade secrets, and that Brown went to work for Sasser, a direct national competitor, after leaving BluSky Restoration. Preserving BluSky Restoration's confidential information and customer relationships is a legitimate economic interest which supports the enforceability of the restrictive covenants. While that is enough for the restrictive covenants to survive, the Court also notes that Brown was allegedly in a largely client-facing role while working at BluSky Restoration, and BluSky Restoration and BluSky HoldCo have a legitimate economic interest in protecting and maintaining their business relationships with clients and vendors.

93.    The pleadings do not disclose, as a matter of law, that Brown will suffer grave harm as a result of enforcing the restrictions. Given the knowledge Brown had of the inner workings of BluSky Restoration and BluSky HoldCo, and the information and customers he had access to in his role as National Director of Restoration, the Court also finds that the restrictive covenants survive a balance of the equities.

94.    The restrictive covenants in the LLC Agreement, at least at this early stage of the litigation, are neither unenforceable nor overbroad as a matter of law. Therefore, the Motion is DENIED as to BluSky Restoration and BluSky HoldCo's claims for breach of the LLC Agreement.

### iii.    BluSky Restoration and BluSky HoldCo's Claims for Breach of Contract as to the LP Agreement

95.    BluSky Restoration's third claim and BluSky HoldCo's first claim is for breach of the LP Agreement. (SAC ¶¶ 130–42; HoldCo Countercl. ¶¶ 109–20.) The

relevant pleadings allege that the LP Agreement and its restrictive covenants constituted a valid and enforceable agreement supported by consideration; that Brown knew that the restrictive covenant provisions of the LP Agreement, including without limitation the confidentiality, non-competition, and non-solicitation provisions, were valid and enforceable; and that Brown breached those covenants. (SAC ¶¶ 131, 134, 136–41; HoldCo Countercl. ¶¶ 110, 112, 114–19.)

96.     BluSky Restoration and BluSky HoldCo have both alleged sufficient facts to otherwise state valid claims for breach of the LP Agreement.

97.     Brown argues that the claim for breach of the LP Agreement fails because the LP Agreement and its restrictive covenants were terminated by the Merger. (Br. Supp. Mot. 12.) First, Brown argues the four corners of the LP Agreement are clear that the restrictive covenants do not survive dissolution of the partnership, pointing to sections 8.4(e) and 12.16(m) as the only provisions with survivorship clauses. (Br. Supp. Mot. 13–14.) Further, Brown argues the "drag-along" provision in section 9.4 of the LP Agreement allowed a purchaser to exercise the drag-along right and required limited partners to agree to any new restrictive covenants, if requested, and that right was never exercised. (Br. Supp. Mot. 14–15.) Finally, Brown argues the Merger Agreement converted his limited partnership interest into a right to cash payment, terminating his obligations under the LP Agreement. (Br. Supp. Mot. 16–17.)

98.     BluSky Restoration and BluSky HoldCo argue that Brown continued to be bound to the LP Agreement for a number of reasons, but primarily because he

executed the Letter of Transmittal. (Joint Br. Opp. Mot. 22.) BluSky Restoration and BluSky HoldCo argue that the Letter of Transmittal independently binds Brown to the terms of the LP Agreement post-merger. (Joint Br. Opp. Mot. 22.)

99. All three of Brown's arguments are effectively defeated by the terms of the Letter of Transmittal. The Letter of Transmittal specifically states that, in accordance with section 9.4 of the LP Agreement, all limited partners must take "all actions necessary to comply with the terms of the Management LP Agreement." (Letter of Transmittal ¶ 3; Joint Br. Opp. Mot. 22.) This specifically rebuts Brown's argument that the LP Agreement terminated with the merger. Viewed in the light most favorable to the non-movants, the terms of the LP Agreement and the restrictive covenants therein survived the merger. Therefore, the Court rejects Brown's argument that this breach of contract claim fails because the LP Agreement and its restrictive covenants were terminated by the merger.

100. The Court recognizes that the restrictive covenants contained in the LLC Agreement are analogous to those contained in the LP Agreement. Therefore, for the same reasons stated herein at Paragraphs 77–94 as to the claims for breach of the LLC Agreement, the Court finds that there are several remaining material issues of fact preventing a grant of the Motion. Taking all well pled allegations by the non-movant as true, given that there are remaining issues of fact as to whether the LP Agreement's restrictive covenants are valid under Delaware law, the Court must deny the Motion. *See Ragsdale*, 286 N.C. at 137.

101. Therefore, the Motion is DENIED as to BluSky Restoration and BluSky HoldCo's claims for breach of the LP Agreement.

**B. BluSky Restoration and BluSky HoldCo's Claims for Injunctive Relief**

102. BluSky Restoration alleges in Count Five of the SAC "that Brown should be enjoined from continued possession, use, or disclosure of its Trade Secrets and other confidential information." (SAC ¶ 158.) It further alleges that, "[i]n the absence of injunctive relief, Brown will continue to use and disclose BluSky Restoration's Trade Secrets and other confidential and proprietary information." (SAC ¶ 162.)

103. BluSky HoldCo alleges in Count Three of the Counterclaim that "Brown should be enjoined from continued possession, use, or disclosure of the Trade Secrets and other confidential information described herein." (HoldCo Countercl. ¶ 138.) It further alleges that BluSky HoldCo will "suffer irreparable injury if the Court does not enjoin Brown from using and disclosing BluSky HoldCo and BluSky Restoration's Trade Secrets and other confidential information." (HoldCo Countercl. ¶ 143.)

104. Brown argues that the claims for injunctive relief should be dismissed, to the extent the Court also dismisses the claims for breach of the 2017 Agreement, the LP Agreement, or the LLC Agreement.

105. Since the Court does not grant judgment on the pleadings as to any of the breach of contract claims, the Court DENIES Brown's request for dismissal of the claims for injunctive relief.

## C.    BluSky Restoration's Count Six for Punitive Damages

106.    BluSky Restoration alleges in Count Four of the SAC that Brown's misappropriation of trade secrets "and other confidential and proprietary information was intentional, willful, wanton, and malicious."[3]  (SAC ¶ 172.)

107.    Brown does not request the Court grant judgment on the pleadings as to BluSky Restoration's Count Four for misappropriation of trade secrets.  (Br. Supp. Mot. 2.)   However, Brown does contend that the standalone claim for punitive damages in Count Six is a remedy, not an independent claim, and thus should be dismissed.

108.    North Carolina General Statutes § 1D-15 specifically sets forth the circumstances appropriate for awarding punitive damages.   While "[p]unitive damages shall not be awarded against a person solely for breach of contract[,]" they may be awarded if the claimant proves liability for compensatory damages, as well as one of the following aggravating factors: (1) fraud; (2) malice; or, (3) willful or wanton conduct.  N.C.G.S. § 1D-15(a), (d) (2022).

109.    However, "North Carolina courts have repeatedly held that 'a claim for punitive damages is not a stand-alone claim.'" *Beam v. Sunset Fin. Servs.*, 2019 NCBC 55, ¶ 59 (N.C. Super. Ct. Sept. 3, 2019) (internal citations omitted).  "A claim for punitive damages may succeed only if plaintiffs prove . . . [liability] for compensatory damages and [that] their injury was the result of fraud, malice, or

---

[3] BluSky HoldCo does not state a claim for punitive damages in its Counterclaim.  (*See generally* HoldCo Countercl.)

willful or wanton conduct" under N.C.G.S § 1D-15. *Funderburk v. JPMorgan Chase Bank, N.A.*, 241 N.C. App. 415, 425 (2015).

110. Accordingly, the Court GRANTS the Motion as to BluSky Restoration's Count Six. This holding does not impair BluSky Restoration's ability to seek punitive damages for conduct which may later be found to meet the statutory requirements of N.C.G.S. § 1D-1, *et seq.*

### D. Brown's Counterclaim for Declaratory Judgment construing the enforceability of the LP Agreement

111. Brown seeks judgment in his favor on his counterclaim for declaratory judgment construing the enforceability of the LP Agreement. (Mot. 2.)

112. Brown contends that his claim for declaratory judgment parallels BluSky Restoration and BluSky HoldCo's claims for breach of the restrictive covenants in the LP Agreement. (Br. Supp. Mot. 12.) Brown argues that, as a result of the termination of BluSky Management, the LP Agreement and its restrictive covenants do not survive the merger since there was not a survivorship clause included as to those covenants. (Br. Supp. Mot. 13–14.)

113. The Court has herein determined that the restrictive covenants at issue survive the Motion seeking judgment in Brown's favor based on their asserted unenforceability. As a result, Brown is not entitled to a declaratory judgment in his favor pursuant to Rule 12(c).

114. Therefore, the Court DENIES the Motion as to Brown's claim for declaratory judgment.

## VI.     CONCLUSION

115.     For the foregoing reasons, the Motion is **GRANTED**, in part, and **DENIED** in part, as follows:

a.     Brown's Motion for Partial Judgment on the Pleadings is **GRANTED** as to BluSky Restoration's stand-alone claim for punitive damages in Count Six; and

b.     Brown's Motion for Partial Judgment on the Pleadings is otherwise **DENIED**.

**SO ORDERED**, this the 20th day of October, 2022.

/s/ Michael L. Robinson
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases